# DISTRICT COURT OF THE VIRGIN ISLANDS

# DIVISION OF ST. CROIX

| | |
|---|---|
| LARRY L. HATTER,<br><br>    Plaintiff,<br><br> v.<br><br>GUARDIAN INSURANCE COMPANY,<br><br>    Defendant.<br>_____ | 1:18-cv-00041 |

TO: Lee J. Rohn, Esq.
   Maria Tankenson Hodge, Esq.

## ORDER

THIS MATTER came before the Court upon Plaintiff's Motion To Set The Scope Of The Appraisal Process (ECF No. 66, "Pl.'s Mot."). Defendant filed a response in opposition to the motion on August 1, 2019 (ECF No. 67, "Opp'n."). Plaintiff did not file a reply.[1]

At the heart of Plaintiff's motion is (1) a request that the Court conduct a *Banks* analysis[2] and determine that under Virgin Islands law insurance appraisers do not have the authority to consider causation as part of their findings during the appraisal process. For the reasons stated herein, the Court finds the motion as to that issue to be premature, and, as such will deny that portion of the motion without prejudice.

---

[1] The Court granted Plaintiff one additional working day to submit a reply (ECF No. 69), but he did not do so.

[2] In *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 969 (V.I. 2011), the Supreme Court of the Virgin Islands held that when precedent is lack on a common law rule, courts in the Virgin Islands must conduct what has become known as a "*Banks* analysis" to determine the applicable law in the Virgin Islands. A *Banks* analysis requires the balancing of three non-dispositive factors: (1) whether any U.S. Virgin Islands courts have previously adopted a particular rule, (2) the position taken by a majority of courts from other jurisdictions, and (3) which approach represents the soundest rule for the U.S. Virgin Islands. *See, e.g., Halliday v. Great Lakes Ins. SE*, No. 3:18-CV-00072, 2019 WL 3500913, at *5-14 (D.V.I. Aug. 1, 2019).

The remainder of Plaintiff's motion (2) accuses Defendant's appraiser of "fraudulent conduct," and (3) lays out a complex series of procedural rules that Plaintiff wishes the Court to impose upon the appraisal process. These aspects of the motion are denied with prejudice.

## DISCUSSION

The Court will address each of Plaintiff's arguments in turn. For a quick refresher, the language of the appraisal provision in the parties' insurance contract states as follows:

> [i]f you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree on an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers will separately set the amount of loss. If the appraisers submit a written report of agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
>
> a. Pay its own appraiser; and
>
> b. bear the other expenses of the appraisal and umpire equally.

Insurance Policy at 7, Conditions at para. 8 (a copy of which is attached to the Complaint as Attachment #4 (Exhibit 2) (ECF No. 1-4)).

### 1. "AMOUNT OF LOSS"

The bulk of Plaintiff's motion is devoted to a discussion of how to define "amount of loss" within the context of the Policy, particularly as it relates to the limitations on the

appraisers' findings. Plaintiff argues that because the parties have already agreed that there was a "covered loss," the appraisers should be limited only to determining what it would cost to repair the overall loss to Plaintiff's property. *See generally* Pl.'s Mot at 2-3. As Plaintiff would have it, any determination as to whether Hurricane Maria caused the damage to Plaintiff's property is a legal matter that should be left to the Court to decide. *See id.* at 2-11. Defendant argues that the Policy language speaks for itself and that appraisers can determine causation in their assessment. Opp'n. at 3-4.

Resolution of this issue might ultimately be required, but the Court cannot identify why judicial intervention is necessary at the present time. Though the parties' cooperation thus far has hardly been a model for how appraisals should be conducted, that alone is not a sufficient basis for the Court to guide the appraisers during every step of the appraisal. Indeed, there is a "long standing duty of courts to not interfere with the appraisal process." *Adami v. Safeco Ins. Co. of Ind.*, No. 4:17-CV-574, 2018 WL 501093, at *4 (E.D. Tex. Jan. 22, 2018).

The Court is most concerned about the ripeness of the issue at this point. Neither of the appraisers, much less the umpire, have indicated any confusion thus far as to how to value the amount of the loss suffered by Plaintiff. The appraisers in this case apparently have not even submitted their proposals to the umpire. And, while the umpire's award will be presumptively valid, it can still be vacated for procedural deficiencies, because "it is well-settled that an appraisal award may be set aside due to fraud, mistake, misfeasance, collusion, prejudice or partiality.") *See Vento v. Certain Underwriters at Lloyd*s, No. CV

2018-91, 2019 WL 2402973, at *4 (D.V.I. Apr. 26, 2019) (quoting *Ambient Grp., Inc. v. Cont'l Ins. Co.*, 1994 WL 326602, at *2 (D.V.I. Mar. 2, 1994). It seems prudent to let the process play out before the Court takes action.

The Court has identified a loosely analogous case that addresses Plaintiff's procedural posture. Even though it was not in the context of an appraisal, in *Companion Assurance Co. v. Alliance Assurance Co. Ltd.*, 585 F.Supp. 1382, 1383 (D.V.I. June 4, 1984), an insurance company filed a declaratory judgment action against several defendant insurers "requesting the court to determine which of the named insurance carriers ha[d] a primary duty to defend, and the respective rights and priorities of the remaining excess insurers." *Id.* Prior to the court's decision, one of the defendant insurers conceded that it was primarily liable for defending, leaving the court to decide only the "order of liability, if any, of the remaining insurers." *Id.* at 1384. As a result, the court found that there was no present controversy between the excess insurers, as none had a present duty to defend. *Id.*

Similarly, Plaintiff seeks a judicial interpretation of the Policy to define "amount of loss." But without a true conflict that has yet to be borne through the appraisal process, the Court finds that no actual controversy exists between Plaintiff and Defendant as to this particular issue.

Further, as Defendant correctly states, Plaintiff's request in this motion is tantamount to an additional claim seeking a declaratory judgment, and "Plaintiff may not now embroider his complaint, in an action that has been stayed by order of the court, to allow wholly new claims to be added, as an excuse to dictate procedures to the appraisers

and umpire." Opp'n. at 5. While the Virgin Islands Code does permit declaratory actions[3], it is not apparent that the Court has any authority to rule on such a claim when it was not included in the Complaint.

For these reasons, the Court will deny Plaintiff's motion on this issue without prejudice.

## 2. **FRAUDULENT CONDUCT**

Plaintiff argues that Defendant altered the appointment of the umpire by removing portions of Plaintiff's proposed scope of appraisal that Plaintiff's appraiser had signed and then submitted on June 3, 2019. Pl.'s Mot. at 1. Plaintiff alleges that Defendant then signed the altered proposal and sent it to the umpire without consulting Plaintiff as to the alleged changes. *Id.*

Defendant characterizes Plaintiff's allegations as "absurd." Opp'n. at 4. The Court agrees with Defendant. As Defendant correctly points out, the purpose of the document submitted by Plaintiff was to button up previous disputes regarding the selection of an umpire. *Id.* at 4-5. Defendant highlights that "[w]hen [Defendant]'s appointed appraiser

---

[3] Section 1262 of the Declaratory Judgments chapter states as follows:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

V.I. Code Ann. tit. 5, § 1262.

finally received the belated agreement to the umpire, embedded in an unacceptable set of procedures invented by [Plaintiff]'s appraiser, [Defendant's appraiser] was absolutely free to use that agreement to finally allow the appraisal to proceed and the umpire to be appointed." *Id.* at 5. Plaintiff's attempt to strong-arm Defendant was inappropriate, and there is no basis to accuse Defendant of fraud.

As an additional matter, it is unclear what relief is even sought by Plaintiff in raising this issue. For these reasons, the Court will deny Plaintiff's motion as to his fraudulent conduct claim.

### 3. **RULES FOR APPRAISAL**

Plaintiff's wish-list of procedures to be followed during the appraisal process are stated as follows:

1. The appraisers may make final inspections of the property within 21 days. The appraisers will initially attempt to isolate and resolve any disputes between themselves without the umpire and enter into a signed stipulation as to those resolved items. That stipulation will be binding at trial.

2. The umpire will schedule the appraisal hearing at a date that is within a 14-day period after the reinspection period. Each appraiser shall notify the umpire if they intend to present testimony at the hearing along with a list of intended witnesses. That witness list along with each appraiser's complete presentation, written or digital, reports shall be given to the umpire no later than 7 days before the hearing date.

3. The umpire shall immediately provide the opposing appraiser with the other appraiser's presentation.

4. At the hearing the appraisers and the umpire will be allowed to ask questions to any witnesses pertaining to their knowledge of the claim or the damages calculations. The appraisal panel will then meet in closed

>
> session so the appraisers can present their respective positions on the damages to the umpire.
>
> 5. Within 10 days after the hearing, an award shall be made and signed by at least two of the appraisal panel. The umpire will immediately forward the award to each party along with the umpire's bill for services to conclude the appraisal process. The umpire's bill shall be submitted within 7 days of the award.

Pl.'s Mot. at 11. Plaintiff cites no basis beyond his own aspirations as to why these procedures should be adopted, and the Court will not accept his invitation to impose these rules. *See also Gribbin v. Island Nat. Ins. Co.*, No. CIV. 533/1990, 1990 WL 10659434, at *4 (Terr. V.I. Nov. 14, 1990) ("[T]here is no requirement that the appraisers meet and make determinations upon proof adduced at a hearing. In fact, the appraisers may predicate their decision upon their own ex parte investigations.").

For these reasons, the Court will deny Plaintiff's motion as to his requested rules for appraisal.

WHEREFORE, it is now hereby **ORDERED:**

1. That Plaintiff's Motion To Set The Scope Of The Appraisal Process (ECF No. 66) is **DENIED WITHOUT PREJUDICE** as to Plaintiff's request to have the Court define "amount of loss" within the context of the Policy.

2. That Plaintiff's Motion To Set The Scope Of The Appraisal Process (ECF No. 66) is otherwise **DENIED WITH PREJUDICE**.

ENTER:

Dated: August 19, 2019

/s/ George W. Cannon, Jr.
GEORGE W. CANNON, JR.
MAGISTRATE JUDGE