## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **LARRY L. HATTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 2018-0041** |
| | ) | |
| **GUARDIAN INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**Attorneys:**
**Lee J. Rohn, Esq.**
St. Croix, U.S.V.I.
**Daniel K. Bryson, Esq.**
Raleigh, NC
  *For Plaintiff*

**Maria Tankenson Hodge, Esq.**
**Mark K. Hodge, Esq.**
St. Thomas, U.S.V.I.
  *For Defendant*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on Plaintiff Larry L. Hatter's ("Plaintiff") "Renewed Motion to Amend Complaint" ("Motion to Amend") (Dkt. No. 107), Defendant Guardian Insurance Company's ("Defendant") Opposition thereto (Dkt. No. 108), and Plaintiff's Reply (Dkt. No. 109). Also before the Court is Plaintiff's "Motion to Schedule a Status Conference to Enter Into a Scheduling Order" (Dkt. No. 111), Defendant's Opposition thereto (Dkt. No. 112), and Plaintiff's Reply (Dkt. No. 113).

For the reasons discussed below, Plaintiff's Motion to Amend Complaint will be denied, with some claims dismissed with prejudice and others without prejudice, and Plaintiff's Motion to Enter Scheduling Order will be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated this action, pursuant to the terms of an insurance Policy ("Policy") issued by Defendant, for damage sustained to real property during Hurricane Maria. (Dkt. No. 1). In his original Complaint, Plaintiff asserts two claims: (1) breach of contract and (2) bad faith failure to pay under the terms of an insurance contract. *Id.* Plaintiff alleges that he purchased windstorm insurance from Defendant covering his property on St. Croix, and the Policy was in effect at the time of Hurricane Maria. *Id.* ¶¶ 6-11. As a result of the September 20, 2017 hurricane, Plaintiff's waterfront property sustained substantial structural and water damage for which he made a claim to Defendant under the Policy. *Id.* ¶¶ 10-14.

Plaintiff further alleges that Defendant hired an unqualified insurance appraiser to assess the damage to his property and claims that the adjustor provided a "low-ball" assessment of the damage by failing to account for significant damage. *Id.* ¶¶ 15-17. Plaintiff hired a forensic structural engineer who provided a damage estimate significantly higher than that provided by Defendant's appraiser. *Id.* ¶¶ 18-19. Defendant then hired a new appraiser who "admitted that the initial adjuster 'missed' the severity of the damage to the Property and that the damages were more properly reflected in the report obtained [from Plaintiff's structural engineer]." *Id.* ¶ 20. Plaintiff alleges that as the parties continued to negotiate disputed portions of the insurance claim, they agreed that Defendant would release an undisputed amount of approximately $265,000. *Id.* ¶¶ 24-25. However, Defendant unilaterally reduced the agreed amount to $100,000, *id.* ¶ 26, following which Plaintiff filed the instant matter on September 18, 2018.

Defendant filed a timely Answer admitting that it issued the insurance Policy covering Plaintiff's property and that the property sustained damage. (Dkt. No. 8 ¶¶ 8-10). Defendant further admitted that Plaintiff was entitled to payment under the Policy, but only in the amount calculated

according to the terms and conditions set forth in the Policy. *Id.* ¶ 39. As affirmative defenses, Defendant asserted, *inter alia*, that Plaintiff's claims were premature because conditions precedent to payment under the Policy had not been met and that Plaintiff failed to join an indispensable party, i.e., the mortgagee. *Id.* at 5-6.

On December 5, 2018, Defendant filed a "Motion to Compel Plaintiff to Conduct Appraisal of His Loss, and for Stay of this Action Pending Completion of Appraisal." (Dkt. No. 15). Defendant argued that the Policy provides that if the parties fail to agree on the amount of the loss, either may demand an appraisal which will determine the amount of loss ("Appraisal Process"). (Dkt. No. 16 at 1). On January 11, 2019, the Magistrate Judge granted Defendant's Motion to Compel the Appraisal and stayed the action until the Appraisal Process was complete and the parties so notified the Court. (Dkt. No. 26 at 4).

On August 13, 2020, Defendant filed a "Notice of Entry of Award by [U]mpire and Appraiser." (Dkt. No. 73). In the Award, it was determined that the Replacement Cost Value of Plaintiff's home was $550,500.00 and the Actual Cash Value of the property was $451,410.00. (Dkt. No. 73-1). In November 2020, Plaintiff received payments for the amounts determined in the Appraisal for the physical damage to his real and personal property. (Dkt. Nos. 91 at 1; 91-1 at 2). On December 28, 2020, Defendant then filed a Motion for Summary Judgment and supporting documents. (Dkt. Nos. 85-87).

On March 19, 2021, Plaintiff filed the instant Motion to Amend the Complaint (Dkt. No. 107), attaching a proposed First Amended Complaint ("FAC"). In the FAC, Plaintiff seeks to expand his Complaint to include several additional claims. Plaintiff identified the various claims in his Reply memorandum in support of his Motion to Amend as intentional or negligent misrepresentation (Count I); breach of contract and violation of good faith and fair dealing (Count

II); common law breach of fiduciary duty (Count III); equitable estoppel (Count IV); violation of 22 V.I.C. § 228(a) by failing to make timely payments of all sums due under the Policy (Count V); statutory breach of Defendant's fiduciary duty under the Virgin Islands Insurance Code (Count VI); violation of the Virgin Islands Building Code, 29 V.I.C. § 310, for failing to compensate Plaintiff for the full cost of rebuilding the property so that it is consistent with the Virgin Islands Building Code (Count VII); violation of the Virgin Islands Insurance Code, 22 V.I.C. § 1201, *et seq.*, which prohibits unfair or deceptive business conduct for persons engaged in the business of insurance (Count VIII); negligent hiring and retention of Defendant's appraisers (Count IX); and bad faith refusal to pay Policy proceeds (Count X). (Dkt. Nos. 107-1, 109). Defendant opposes Plaintiff's Renewed Motion to Amend, asserting*, inter alia,* that Plaintiff unduly delayed filing the Motion and the various claims are futile. (Dkt. No. 108).

## II.    APPLICABLE LEGAL PRINCIPLES

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a motion to amend under Rule 15 may be denied when "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (quotations omitted). Moreover, "[w]here a claim is barred by the statute of limitations, amendment is only permitted if the proposed amended complaint 'relates back to the date of the original pleading' pursuant to Rule 15(c)." *Anderson v. Bondex Int'l, Inc.*, 552 F. App'x 153, 156 (3d Cir. 2014)

### III.    DISCUSSION

**A.    Motion to Amend**

**1. Relation Back**

First, the Court will address whether certain of Plaintiff's claims relate back to his original Complaint. Defendant argues that Counts I, III, IV, V, VI, VII, and VIII are state claims that are subject to a two-year statute of limitations that has lapsed. (Dkt. No. 108 at 10-14). Defendant argues that these claims do not relate back to the original Complaint because they are based on pre-hurricane conduct, whereas the original Complaint focused on post-hurricane conduct. *Id.* at 12-14. For example, Defendant specifically argues that the facts alleged in the original Complaint focus, *inter alia*, on Defendant's alleged breach of contract for not compensating Plaintiff for hurricane-related damage. *Id.* at 12. In contrast, the FAC now raises claims relating to Defendant's conduct prior to Hurricane Maria, including allegations that Defendant misrepresented the scope of Plaintiff's coverage when he purchased the Policy. *Id.* at 13-14. Defendant claims that the original Complaint never disclosed the possibility that Plaintiff would raise the claims he now seeks to add to the Complaint. Plaintiff argues, on the other hand, that the causes of action in the FAC are not time-barred because the statute of limitations was equitably tolled or, in the alternative, that the new claims in the FAC relate back to the original Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. (Dkt. No. 109 at 5-6).

The Court finds that Plaintiff's newly alleged causes of action relate back to the original Complaint because they arise from the same operative facts and Defendant had fair notice that such claims could reasonably arise. Rule 15 of the Federal Rules of Civil Procedure addresses amended and supplemental pleadings. Under Rule 15(c), an amended pleading "relates back" to the date of the original pleading when, *inter alia*, "the amendment asserts a claim or defense that

arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c). "Rule 15(c) endeavors to preserve the important policies served by the statute of limitations—most notably, protection against the prejudice of having to defend against a stale claim, as well as society's general interest in security and stability—by requiring 'that the already commenced action sufficiently embraces the amended claims.'" *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012) (quoting *Nelson v. Cty. of Allegheny*, 60 F.3d 1010, 1014-15 (3d Cir. 1995)).

Although not expressly stated in Rule 15(c), when analyzing whether relation back is appropriate, courts put particular focus on whether the original pleading put the opposing side on notice of the new claim or defense raised in the amended pleading. *Id*. at 146 (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)) ("[I]t is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'"). "[T]he underlying question for a Rule 15(c) analysis is 'whether the *original* complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint.'" *Id*. (quoting *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008)) (emphasis in original). Relation back is appropriate only when the opposing party had "fair notice of the general fact situation and the legal theory upon which the amending party proceeds." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004).

"Courts have liberally construed Rule 15(c) to allow amendments to relate back to the original pleading provided that the opposing party had notice of the claim and would not be prejudiced by the amendment." *Blatt v. Merrill Lynch*, 916 F. Supp. 1343, 1351 (D.N.J. 1996)

(citing *In re Chaus Sec. Litig.*, 801 F.Supp. 1257, 1264 (S.D.N.Y.1992); *FDIC v. Conner*, 20 F.3d 1376, 1385-86 (5th Cir.1994); *Fuller v. Marx*, 724 F.2d 717, 720 (8th Cir. 1984)); *see also In re Sharps Run Assocs.*, L.P., 157 B.R. 766, 786 n.14 (D.N.J. 1993) ("The comments to the 1991 Amendment to Rule 15(c)(1) evince a manifest intention to liberally construe the relation back doctrine . . . .").

In view of the liberal construction of Rule 15(c), the Court finds here that the claims raised in the FAC relate back to the conduct set forth in the original Complaint. While the original Complaint indeed focuses on Defendant's post-hurricane conduct and the FAC raises new claims based on Defendant's pre-hurricane conduct, the operative facts of the situation remain the same. The new claims arise out of the same transaction—the insurance Policy and payment thereunder— and the nature of Plaintiff's claims remain the same—that Plaintiff has not been fully compensated for claims related to his insurance Policy.

The Court thus finds that Defendant was adequately put on notice that it could be subject to claims regarding its pre-hurricane conduct because they arise from the same transaction and occurrence at the center of the claims in the original Complaint.[1] *See Navarre Chevrolet, Inc. v. Hyundai Motor Am. Corp.*, No. 2:18-cv-0327, 2019 U.S. Dist. LEXIS 86496, at *20-21 (W.D. La. Feb. 4, 2019) (finding that the new misrepresentation claims asserted in the amended complaint related back to the original complaint because the misrepresentation claims involved the "same event" as the original claims—the revocation of the franchise—even though these claims raised new issues regarding the revocation of the franchise); *Am. Asset Fin., LLC v. Feldman* (*In re*

---

[1] Defendant argues that it "had no reason to expect these new claims." (Dkt. No. 108 at 3). However, Plaintiff stated as early as December 19, 2018—in his Opposition to Defendant's Motion to Compel the Appraisal—that there were disagreements regarding the scope of the Policy. (Dkt. No. 22 at 2, 4-5). This provided additional notice to Defendant that alleged misrepresentation of the scope of the Policy could arise when it came time to make payment on a claim.

*Feldman*), 506 B.R. 222, 232 (Bankr. E.D. Pa. 2014) (finding that the plaintiff's amended complaint, which added a new claim, related back to the original complaint where it involved the same disputed contract and merely fleshed out the facts about events preceding and following the signing of the contract); *Certeza v. Wexford Health Sources, Inc.*, Civil Action No. 18-1791, 2022 U.S. Dist. LEXIS 123359, at *23 (D. Md. July 11, 2022) (finding that the plaintiff's new claim related back to the original claim against the defendant because both claims asserted deficiencies in the treatment of the plaintiff's injuries, even though the new claim raised a deficiency that occurred during a different time period from the deficiency identified in the original claim); *see also Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983) ("When a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be."); *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1543 (8th Cir. 1996) (recognizing that Rule 15(c) should be liberally construed so that amendments relate back to the date of the original pleading if they are related to the general fact situation alleged in the original pleading); *cf. United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 880 (D.C. Cir. 2010) (finding no relation back because the new claims concerned two different contracts from the contract described in the original claim, and thus did not involve the same transaction).

For the foregoing reasons, the Court finds that the newly alleged claims in the FAC are not time-barred because they relate back to the original Complaint.

### 2. Delay

Defendant also objects to Plaintiff's Motion to Amend on the ground that it is untimely and that motions to amend are disfavored after motions for summary judgment are filed. (Dkt. No. 108 at 2). While Defendant acknowledges it requested and obtained a stay when it invoked the

Appraisal Process, it argues that Plaintiff "at no point permitted the stay to prevent Plaintiff from making relevant filings in the instant case" and that Plaintiff could have still filed a motion to amend the Complaint. *Id*. at 3-4.

Despite Defendant's contentions to the contrary, moving to amend a complaint at the summary judgment stage "is not unusual," and thus is not a sufficient basis for denial of leave to amend. *Geness v. Cox*, 902 F.3d 344, 364 (3d Cir. 2018) (finding no undue delay where the motion to amend was filed at the summary judgment stage); *Adams v. Gould, Inc.*, 739 F.2d 858, 869 (3d Cir. 1984) (same); *see also Leary v. Nwosu*, No. 05-5769, 2007 U.S. Dist. LEXIS 74202, at *8 (E.D. Pa. Oct. 2, 2007) (granting request to amend complaint after a motion for summary judgment was filed); *Whitecap Inv. Corp. v. Putnam Lumber & Exp. Co.*, No. 2010-139, 2013 U.S. Dist. LEXIS 66349, at *6, 10-11 (D.V.I. May 9, 2013) (same). Moreover, although over two years lapsed between the filing of the complaint and Plaintiff's Motion to Amend, this too is not a sufficient basis for denial of leave to amend. *See Williams v. Cost-U-Less, Inc.*, No. 2011-025, 2014 U.S. Dist. LEXIS 90849, at *10 (D.V.I. July 3, 2014) (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)) ("'The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay,' as 'delay alone is an insufficient ground to deny leave to amend.'").

Rather, the appropriate "focus" in the undue delay analysis is "the movant's reasons for not amending sooner." *Langbord v. United States Dep't of the Treasury*, 832 F.3d 170, 188 (3d Cir. 2016) (quoting *Cureton*, 252 F.3d at 273). Here, much of the time that elapsed prior to the filing of Plaintiff's request to amend the Complaint included the 20 months in which the matter was stayed—by Defendant's request so the parties could commence the Appraisal Process. Although Defendant notes that Plaintiff made relevant filings during the period of the stay, these filings

involved the appraisal process or were administrative in nature.[2] While Plaintiff could have requested that the Court lift the stay so that he could file amended pleadings, he was under no such obligation. *See White v. PNC Fin. Servs. Grp.*, No. 11-7928, 2017 U.S. Dist. LEXIS 3240, at *30 (E.D. Pa. Jan. 9, 2017) ("[P]laintiffs have offered an adequate explanation for not amending sooner: there was a stay imposed in the case. . . . The plaintiffs' 'delay'—if one can even call it that—was not 'undue.'"); *Depomed, Inc. v. Purdue Pharma L.P.*, No. 13-571, 2017 U.S. Dist. LEXIS 12967, at *10 (D.N.J. Jan. 31, 2017) (finding that "delay" in filing motion to amend complaint until after stay was lifted was not a delay at all). Thus, the Court finds under the circumstances here that the existence of the stay provides a satisfactory explanation for not moving to amend the Complaint during that period.

Given that the stay was in effect until "the parties [] completed the appraisal process and filed notice thereof with the Court" (Dkt. No. 26 at 4), and the "Notice of Entry of Award by [U]mpire and Appraiser" (Dkt. No. 73) was filed by Defendant on August 13, 2020, Plaintiff's initial request to amend occurred five months after the stay was lifted.[3] The Court does not consider this five-month period as a sufficient delay to warrant the denial of leave to amend. *See St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, No. 04-1436, 2009 U.S. Dist. LEXIS 49882, at *3 (D. Del. June 10, 2009) (finding no undue delay where the plaintiff moved to amend the complaint six months after the stay in the matter was lifted); *Babin v. Caddo*

---

[2] For example, Plaintiff filed an *ex parte* motion regarding withdrawal of his counsel (Dkt. No. 37) and a "Motion to Set the Scope of the Appraisal Process" (Dkt. No. 66).

[3] Plaintiff initially filed his Motion to Amend on January 28, 2021. (Dkt. No. 90). On March 19, 2021, the Magistrate Judge denied this initial Motion to Amend without prejudice because it failed to prominently note that it was the First Amended Complaint, in violation of Local Rule of Civil Procedure 15.1. (Dkt. No. 106). That same day—March 19—Plaintiff re-filed the instant Motion to Amend. (Dkt. No. 107).

*E. Estates I, Ltd.*, No. 10-896, 2012 U.S. Dist. LEXIS 113470, at *7 (E.D. La. Aug. 13, 2012) (same); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("[O]nly one appellate court uncovered in our research has approved of denial of leave to amend based on a delay of less than one year."). Further, Plaintiff remained active in this matter during this period, including by filing an opposition to Defendant's Motion for Order on Appraisal Award (Dkt. No. 75) and requesting additional discovery (Dkt. No. 91), thus suggesting that the delay was not for lack of diligence. Accordingly, Plaintiff had a satisfactory basis for waiting five months after the stay was lifted to move to amend his complaint.

For the foregoing reasons, the Court finds that Plaintiff's timing in filing his Motion to Amend does not amount to "undue delay" under the circumstances here.

### 3. Prejudice

Defendant further objects to the Motion to Amend on the basis that the proposed amendments are prejudicial to Defendant. (Dkt. No. 108 at 2-4). Despite the general prescription that courts should freely grant leave to amend under Rule 15, district courts may reject a motion to amend in the face of "threatened prejudice." *Kiskidee, LLC v. Certain Interested Underwriters at Lloyd's of London Subscribing to Policy No. NB043060b*, No. 1:2009-cv-077, 2012 WL 4840716, at *4 (D.V.I. Oct. 10, 2012) (citing *Mayle v. Felix*, 545 U.S. 644, 665-66 (2005)). The touchstone for such a decision is prejudice to the non-moving party. *Gov't Employees Retirement Sys. of the Virgin Islands v. Government of the Virgin Islands*, 995 F.3d 66, 82 (3d Cir. 2021).

Defendant claims that "persons with knowledge of these supposed events would be extremely hard to identify or locate, thus further prejudicing Defendant that had no reason to expect these new claims." (Dkt. No. 108 at 2-3). As discussed in Section III.A.1, *supra*, Defendant *did* have reason to expect these new claims, undermining any argument that it is prejudiced by a

11

lack of notice. Moreover, the persons with knowledge of the relevant events that Defendant claims would be "extremely hard to identify or locate" are Defendant's own current or former employees. The Policy—which covered the period of August 2017 to August 2018—is not so old that finding records and individuals involved in the Policy's construction would be unduly prejudicial for Defendant. And, insofar as it would be difficult to identify or locate those individuals, it is a prejudice that is shared by both parties and does not rise to a degree of prejudice that would bar amendment of the Complaint. *See Johnson v. New Jersey*, No. 18-11299, 2023 U.S. Dist. LEXIS 101450, at *18-19 (D.N.J. June 12, 2023) (granting plaintiff's motion to amend complaint, despite defendant's assertion that it would be prejudiced due to the deaths of two witnesses, because the prejudice would be "evenly distributed" between the parties); *see also Walsh Sec., Inc. v. Cristo Prop.*, No. 97-3496, 2008 U.S. Dist. LEXIS 88782, at *13-15 (D.N.J. Oct. 30, 2008) (allowing plaintiff to amend complaint for claim that had accrued eleven years prior would not be overly prejudicial to defendant because the case had been stayed for substantial time while the parties conducted mediation and there was now opportunity for additional discovery to occur).

For the foregoing reasons, the Court finds that, based on the specific circumstances of this case, the alleged prejudice to Defendant does not justify denial of Plaintiff's request to file an amended complaint.

### 4. Futility

Defendant also argues that the Motion to Amend should be denied because most of the claims would not survive a Rule 12(b)(6) motion to dismiss, and are therefore futile. (Dkt. No. 108 at 4).

"'Futility' denotes that 'the complaint, as amended, would fail to state a claim upon which relief may be granted.' Accordingly, 'in assessing 'futility,' the District Court applies the same

standard of legal sufficiency as applies under Rule 12(b)(6).'" *Spartan Concrete Products, LLC v. Argos USVI, Corp.*, 2017 WL 9292194, at *3 (D.V.I. Feb. 6, 2017) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)), *aff'd*, 929 F.3d 107 (3d Cir. 2019). In other words, the court must determine whether the proposed amended complaint includes sufficient factual, nonconclusory allegations, which if accepted as true, state a plausible claim for relief.

Federal Rule of Civil Procedure 12(b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As stated in *Connelly v. Lane Construction Corp.*, the Third Circuit follows the analysis set forth by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a Rule 12(b)(6) motion:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Mamouzette v. Jerome*, No. CV 13-0117, 2024 WL 2271880, at *2-3 (D.V.I. May 20, 2024) (reviewing the applicable Rule 12(b)(6) analysis).

"When assessing the merits of a Rule 12(b)(6) motion, we accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). Further the district court must accept "all reasonable inferences that can be drawn from [well-pleaded factual allegations] after

construing them in the light most favorable to the nonmovant." *Boseman v. Upper Providence Twp.*, 680 Fed. App'x. 65, 66 (3d Cir. 2017) (internal citation and quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" *Nekrilov v. City of Jersey*, 45 F.4th 662, 668 (3d Cir. 2022) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boseman v. Upper Providence Twp.*, 680 Fed. App'x. 65, 67 (3d Cir. 2017) (internal citation and quotation omitted).

As discussed below, the Motion to Amend will be denied without prejudice as to some of Plaintiff's claims and denied with prejudice as to other claims.

### a.  Misrepresentation–Count I

Count I of the FAC purports to state a claim for Defendant's alleged intentional or negligent misrepresentation of the terms or coverage of the insurance Policy. (Dkt. No. 107-2 at 12-13). Defendant asserts that this claim is futile because it would be barred by the statute of limitations and is inadequately pleaded. (Dkt. No. 108 at 10-14). Moreover, Defendant argues that Plaintiff seems to merge negligent and intentional misrepresentation claims within a single count. *Id.* at 10 n.7.

Under Virgin Islands law, a claim for *intentional* misrepresentation requires the plaintiff to prove that (1) defendant made a misrepresentation of fact, opinion, intention, or law; (2) defendant knew or had reason to know that the representation was false; (3) the misrepresentation was made for the purpose of inducing the plaintiff to act or refrain from acting on the representation; (4) the plaintiff reasonably relied on the representation; and (5) the plaintiff sustained damages due to his justifiable reliance on the representation. *XO Bistro, LLC v. Anthony Merrill & White Star, LLC,*

ST-18-cv-780, 2021 WL 3214788, at *3 (V.I. Super. July 21, 2021); *see also Williams v. Inter-Ocean Ins. Agency, Inc.*, No. SX-18-cv-27, 2020 WL 8020082, at *7 (V.I. Super. Oct. 23, 2020) (elements necessary to state an intentional misrepresentation claim against insurance company relating to coverage).

In contrast, a claim of *negligent* misrepresentation requires allegations that (1) defendant made a representation that was false; (2) the defendant should have known that the representation was false; (3) plaintiff relied on the representation; (4) plaintiff suffered pecuniary loss due to its justifiable reliance on the representation; and (5) defendant failed to exercise reasonable care or competence in obtaining or communicating the information contained in the representation. *Chestnut v. Goodman*, 59 V.I. 467, 475 (V.I. 2013). With a claim of negligent misrepresentation, an "alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." *Id.* at 476 (quoting *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20–21 (3d Cir. 2000)).

A plaintiff asserting a claim of fraud must also comply with Rule 9, which requires that "a party must state *with particularity* the circumstances constituting fraud." Fed. R. Civ. P. 9(b) (emphasis added); *see also Coulter v. Paul Laurence Dunbar Community Center*, 765 F. App'x 848, 851 (3d Cir. 2019) (discussing the heightened pleading requirements of Rule 9(b)). Rule 9(b)'s particularity requirement requires the pleading to "place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Bessemer Sys. Fed. Credit Union v. Fiserv Solutions, LLC*, No. 2:19-cv-0624, 2021 WL 4198281, at *5 (W.D. Pa. Sept. 15, 2021) (citation omitted). A plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Pricaspian Dev. Corp. v. Martucci*, 759 F. App'x 131, 135 (3d Cir. 2019) (citations omitted). A complaint that "lumps"

the who, what, when and where together does not satisfy Rule 9(b). *Riachi v. Prometheus Group*, 822 F. App'x 138, 142 (3d Cir. 2020).

As best that can be ascertained from the FAC, Defendant—at some unspecified point in time and through unidentified agents—"represented" to Plaintiff that his homeowner's insurance Policy provided "adequate and proper coverage" to "fully insure Plaintiff against windstorm damage" (Dkt. No. 107-2 ¶ 10); that after the hurricane, Defendant "misrepresented" the nature and extent of coverage provided, *id.* ¶¶ 44, 54; and that Defendant misrepresented that it could be relied upon to provide "proper insurance coverage," and that Defendant had properly "adjusted [Plaintiff's] claim," *id.* ¶ 68. However, Plaintiff does not allege facts sufficient to plead, with particularity, when the representations were made, who made those representations, why those representations were false, and how reliance on those representations injured Plaintiff.

Thus, Plaintiff's allegations are insufficient to plead with particularity claims of either negligent, intentional, or fraudulent misrepresentation. *See, e.g., Rondon v. Caribbean Leasing & Eco Transp., Inc.*, 74 V.I. 397, 416 (V.I. Super. Ct. 2021) (finding that a plaintiff failed to state a claim for negligent misrepresentation because "[the plaintiff] generalizes that Defendants made false and misleading misrepresentations about selling him a car that worked that were intended to defraud and deceive him. He does not allege what facts Defendants misrepresented to him, and he does not allege or demonstrate that they failed to exercise reasonable care in communicating with him. None of the facts asserted in his complaint refer to any express misrepresentation about the quality and fitness of the car."); *Addie v. Kjaer*, No. 2004-135, 2009 U.S. Dist. LEXIS 15220, at *7 (D.V.I. Feb. 23, 2009) (granting a motion to dismiss a claim for negligent misrepresentation because "[c]rucially, missing from Count III is any allegation that the Sellers made a representation of fact that was false at the time it was made."); *Benjamin v. Bennerson*, No. ST-11-CV-220, 2012

16

V.I. LEXIS 7, at *5 (V.I. Super. Ct. Feb. 13, 2012) (dismissing claim of intentional misrepresentation where "all of the asserted factual allegations are simply legal conclusions disguised as averments of fact, and the Court must discount such statements."); *Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-6272, 2015 WL 7871165, at *5 (D.N.J. Dec. 4, 2015) (claim that insurer intentionally misrepresented its coverage was insufficient when plaintiff failed to allege when statements were made or how policy terms were inconsistent with advertising representations); *Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431, 438 (D. Del. 2006) (failure to satisfy Rule 9(b) pleading standards where plaintiffs did not identify the specific misrepresentations made to them regarding automobile insurance coverage). Given the lack of clarity and specificity, Count I does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and Count I would not, therefore, survive a motion to dismiss. *Iqbal*, 556 U.S. at 678

For the foregoing reasons, Plaintiff's Motion to Amend to add Count I of the FAC will be denied without prejudice.

### b. Breach of Contract and Duty of Good Faith—Count II

Count II of Plaintiff's FAC purports to state a claim for breach of contract and breach of the covenant of good faith and fair dealing implied within that contract. (Dkt. Nos. 107-2 ¶¶ 73-80; 109 at 9). Plaintiff alleges that Defendant breached the contract and the covenant of good faith and fair dealing "by failing to pay Plaintiff for any and/or all losses covered . . . by his insurance contract for over three years; by misleading Plaintiff as to the nature, extent, and applicability of

his insurance coverage; and by concealing Plaintiff's actual rights after Hurricane Maria." (Dkt. No. 107-2 ¶ 78-79).[4]

Count II fails to meet the pleading requirements for a breach of contract claim. Virgin Islands law provides that to state a claim for breach of contract, the party must allege that (1) an agreement existed; (2) a duty was created by that agreement; (3) a contractual duty was breached; and (4) the plaintiff sustained damages due to that breach. *Chapman v. Cornwall*, 58 V.I. 431, 437 (V.I. 2013). However, Plaintiff does not identify the specific contractual duties that Defendant breached, nor explain how Defendant breached them.[5] Further, Plaintiff asserts that Defendant misrepresented the adequacy of the coverage provided by its Policy but does not specify the underlying facts that render this claim plausible.[6] (Dkt. No. 107-2 at 13). Plaintiff also alleges that Defendant breached the Policy by "concealing Plaintiff's actual rights after Hurricane Maria," but fails to identify the rights to which he is referring or how Defendant concealed those rights. (Dkt. No. 107-2 at 14). Accordingly, Plaintiff's claim for breach of contract is insufficient to meet the pleading requirements under the *Iqbal/Twombly* standard.

Count II also fails to meet the pleading requirements for a breach of good faith and fair dealing under the Policy. Under Virgin Islands law, to assert a breach of the implied duties of good faith and fair dealing, a plaintiff must allege: "(1) that a contract existed between the parties, and

---

[4] Plaintiff also asserts a claim of breach of the contractual duty of good faith and fair dealing in Count VI, which will be discussed below.

[5] Plaintiff has already conceded that Defendant paid for the damage sustained as a result of Hurricane Maria, and thus Plaintiff's allegations must raise a plausible claim for breach of contract—as to breach and damages—within this context. *Id*. at 11.

[6] The Court notes that the Policy provided nearly $700,000 in coverage—well above the $550,500 Replacement Cost Value of the home as determined by the parties' Umpire and one appraiser. (Dkt. No. 73-1 at 1).

(2) that, in the performance or enforcement of the contract, the opposing party engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties." *Smith v. Virgin Islands Housing Authority*, 2011 U.S. Dist. LEXIS 19409, at *23 (D.V.I. Feb. 28, 2011) (quoting *LPP Mortgage Ltd. v. Prosper*, 50 V.I. 956, 961 (D.V.I. 2008). The Supreme Court of the Virgin Islands has held that "[t]he duty of good faith limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations. A successful claim . . . requires proof of acts amounting to fraud or deceit." *Edwards v. Marriott Hotel Mgmt. Co. (V.I), Inc.*, 2015 V.I. LEXIS 13, at *10 (V.I. Super. Ct. Jan. 29, 2015).

Plaintiff's claim for breach of duty of good faith and fair dealing cannot survive a motion to dismiss because Plaintiff merely states—after making similar conclusory allegations for breach of contract—that "Defendant acted arbitrarily, capriciously, and in a manner inconsistent with the reasonable expectations of Plaintiff, thereby breaching the covenant of good faith and fair dealing." (Dkt. No. 107-2 at 14). Plaintiff fails to allege with specificity how Defendant acted fraudulently, with deceit, or otherwise inconsistent with the purposes of the agreement.[7]

In view of the foregoing, Plaintiff's proposed claims for breach of contract and breach of the duty of good faith and fair dealing would fail to survive a motion to dismiss. Accordingly, Plaintiff's Motion to Amend to add Count II to the Complaint will be denied without prejudice.

### c. Breach of Fiduciary Duty—Count III

Count III asserts that "Defendant breached its duty to Plaintiff to correctly and adequately underwrite his insurance policy and to adjust and pay his claims." (Dkt. No. 107-2 at 14). Count III also states:

---

[7] While Plaintiff alleges that Defendant's payment under the Policy took three years, Plaintiff has not alleged facts to support a finding that the delay was due to fraud or deceit.

> Defendant owed Plaintiff duties of utmost good faith, honesty, and equity in all insurance matters, and to abstain from deception. Defendant owed Plaintiff a duty not to misrepresent the nature and extent of Plaintiff's insurance coverage and a duty to refrain from making false representations and engaging in unfair practices.

*Id*. at 14-15. It is unclear under what legal theory Count III seeks to allege a claim. Insofar as it alleges negligent, intentional, or fraudulent misrepresentation; breach of contract; or breach of good faith and fair dealing, it is duplicative of Counts I and II, and fails for the reasons previously stated. *See* Sections III.A.4(a) and (b), *supra*.

The Court notes that in his Reply, Plaintiff characterizes Count III as a claim for common law breach of fiduciary duty. (Dkt. No. 109 at 11). Plaintiff cannot amend the FAC through his Reply but the Court will nonetheless address why Count III fails to plead a claim for breach of fiduciary duty. *See Christopherson*, 2021 U.S. Dist. LEXIS 196874, at *6 n.4 (internal quotation omitted) ("[T]o the extent that Plaintiff now attempts to amend her proposed Second Amended Complaint by asserting additional facts and/or allegations . . ., it is axiomatic that the complaint may not be amended by arguments and/or factual allegations set forth in a legal brief.").

Under Virgin Islands law, the elements of a claim for breach of fiduciary duty are: "1) that a fiduciary relationship exists, 2) that the fiduciary breached the duty imposed by said relationship, 3) that the plaintiff must have been harmed, and 4) that the fiduciary's breach was a proximate cause of said harm." *Ebner v. Petrohan*, No. ST-14-CV-537, 2018 V.I. LEXIS 80, 2018 WL 3996888, at *7 (V.I. Super. Ct. Aug. 14, 2018) (conducting a *Banks* analysis and adopting this standard as the best rule for the Virgin Islands); *see also Watts v. Blake-Coleman*, No. 2011-61, 2012 U.S. Dist. LEXIS 43454, at *12-13 (D.V.I. Mar. 29, 2012). As a general rule, "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Arvidson v. Buchar*, No. ST-16-cv-410, 2020 WL 2614673, at *4 (V.I. Super. Ct. Mar. 28, 2020).

Plaintiff alleges that he relied on Defendant's superior skill and knowledge when buying the Policy and that Defendant attempted to "leverage its superior bargaining position" to force Plaintiff to accept less than he was owed. (Dkt. No. 107-2 at 19). However, courts have been cautious in finding the existence of a fiduciary relationship in cases that involve routine arms-length transactions or contracts. *See, e.g., Tekman v. Berkowitz*, 639 F. App'x 801, 806 (3d Cir. 2016) ("There is a crucial distinction between surrendering control of one's affairs to a fiduciary or confidant or party in a position to exercise undue influence and entering into an arms length commercial agreement, however important its performance may be to the success of one's business."); *LLP Mortg., Ltd. v. Caledonia Springs, Inc.*, No. 02-0172, 2007 WL 6035933, at *10 (D.V.I. Nov. 6, 2007) (presumption that lender and borrower operate at arms-length and parties act in their own interest); *Jo-Ann's Launder Ctr., Inc. v. Chase Manhattan Bank, N.A.*, 854 F. Supp. 387, 392 (D.V.I. 1994) (stating that there is a presumption that a bank's loan officer and a client operate at arms-length and the parties each acted in their own interest.).

A fiduciary relationship between the insurer and insured may emerge where there is an exercise of "substantial control" by one party over the other party's affairs. *See, e.g., Helman v. Marriott Int'l., Inc.*, No. 3:2019-cv-036, 2020 WL 4506199, at *6 (D.V.I. Aug. 5, 2020) (degree of control exercised by Management Company over plaintiffs' properties sufficient to support a fiduciary relationship). However, such a fiduciary relationship cannot be established by the unilateral actions of one party in relying on another without the other's knowledge or acceptance of that responsibility. *See, e.g., Ainger v. Great Am. Assurance Co.*, No. 2020-0005, 2022 U.S. Dist. LEXIS 171487, at *30 (D.V.I. Sep. 22, 2022) ("Allegations that Plaintiffs unilaterally placed their trust in Defendant [] are insufficient to plausibly create a fiduciary duty."); *Vent v. MARS Snackfood US, LLC*, 350 F. App'x 533, 535 (2d Cir. 2009) (fiduciary or confidential relationships

require both parties' agreement); *Fagan v. Fischer*, Civ. No. 14-7013, 2019 WL 5587286, at *22 (D.N.J. Oct. 30, 2019) (a fiduciary relationship cannot be created via one party's unilateral and unexpressed belief that such a relationship exists).

Here, Plaintiff does not allege any facts that would suggest that a fiduciary relationship existed between him and Defendant. Plaintiff's FAC thus appears to allege nothing more than a unilateral reliance on Defendant as a fiduciary which, standing alone, is insufficient to plead a fiduciary relationship. *See Trianco, LLC v. IBM*, 271 F. App'x 198, 204 (3d Cir. 2008) ("Absent an allegation of a special relationship, mere assertions of 'trust' in one party are insufficient to support a claim of fiduciary relationship.").

For the foregoing reasons, Plaintiff's claim as pleaded in Count III—belatedly denominated as one for breach of fiduciary duty under common law—would not survive a motion to dismiss. Plaintiff's request to amend the Complaint to add Count III is therefore denied without prejudice.

### d. Equitable Estoppel—Count IV

Count IV of the FAC claims that Defendant is "equitably estopped" from stating that Plaintiff was "underinsured" or that "full coverage" is not warranted, in light of various alleged misrepresentations by Defendant. (Dkt. No. 107-2 ¶¶ 88-90). In the Virgin Islands, equitable estoppel requires the asserting party to demonstrate that: (1) the party to be estopped made a material misrepresentation; (2) the misrepresentation induced reasonable reliance by the asserting party; and (3) the misrepresentation resulted in the asserting party's detriment. *Browne v. Stanley*, 66 V.I. 328, 335 (2017). Given that the Court has already determined that Plaintiff has insufficiently pleaded that Defendant made a misrepresentation, Count IV suffers from the same

22

defects previously discussed in Count I. Moreover, Plaintiff's allegations also insufficiently plead reasonable reliance and the detriment suffered.

Accordingly, Plaintiff has not alleged a plausible claim for equitable estoppel and his request to amend the Complaint to add Count IV is denied without prejudice.

### e.   Private Cause of Action Under Title 22 of the VIC—Counts V, VI, and VIII

Plaintiff asserts in Counts V, VI, and VIII that Defendant violated certain provisions of the Virgin Islands Insurance Code and argues that he has a private right of action to enforce such provisions. (Dkt. Nos. 107-2 ¶¶ 92, 100, 106; 109 at 11-13). Specifically, Count V alleges a violation of 22 V.I.C. § 228(a); Count VI alleges violations of 22 V.I.C. §§ 2, 1201, 1204, and 1209; and Count VIII alleges violations of 22 V.I.C. § 1201 *et seq.*

A private right of action is the right of an individual to bring suit to remedy or prevent an injury resulting from an actual or threatened violation of a legal requirement. *Olive v. DeJongh*, 57 V.I. 24, 43 (V.I. Super. Ct. 2012) (evaluating whether conflict of interest statutes permit a private right of action). When private rights of action are not expressly stated in a statute, there may still be an implied private right of action arising from the statute. *Joseph v. Legislature of Virgin Islands*, No. ST-11-CV-419, 2017 WL 7660718 at *7 (V.I. Super. 2017). In analyzing whether a statute creates an implied private right of action, Virgin Islands courts have stated:

> [T]he legal inquiry is 1) whether the legislature intended to create a personal right; and 2) whether the legislature intended to create a private remedy. The first part of this test accounts for the statute's text and construction to make a determination, while the second part examines the statute's text and construction, as well as the legislative history of the statute. Thus it follows, if the Legislature intended to create a personal right and a private remedy, then an implied private right of action exists for the statute in question.

*Joseph*, 2017 WL 7660718, at *8 (quotations and footnotes omitted); *Olive*, 57 V.I. at 44; *Dennie v. Olympic Rent-A-Car*, 72 V.I. 91, 100 (Super. Ct. 2019). In deciding whether a "private remedy"

23

is intended under the statute, "an express provision of one method of enforcing a substantive rule suggests that the legislature intended to preclude other methods of enforcement." *Joseph*, 2017 WL 7660718, at *8

Plaintiff cites the Virgin Islands Supreme Court case *Rennie v. Hess Oil Virgin Islands Corp.*, 62 V.I. 529 (2015) for the proposition that statutes "which are silent as to who has standing to bring suit should be broadly interpreted to confer standing." *Id*. at 550, (Dkt. No. 109 at 12). In *Rennie*, plaintiff brought an action against his former employer for allegedly terminating him based on his race and national origin in violation of the Wrongful Discharge Act, 24 V.I.C. § 451. The *Rennie* court stated that a broad interpretation of a statute to confer standing should apply in circumstances where "a statute was enacted for the benefit of a special class" and held that the Wrongful Discharge Act, which was written to protect "local employees" from wrongful discharge by their employers, provided an implied private right of action for the plaintiff to sue his employer. *Id.* at 546-48.

The question whether the Virgin Islands Insurance Code ("VIIC") provides a private right of action has not yet been answered by any court applying Virgin Islands law. However, in applying the test set forth in *Joseph*, while also considering the holding in *Rennie*, the Court concludes that Plaintiff's argument lacks merit. Specifically, Plaintiff ignores *Rennie's* application of the broad standing principle to statutes "enacted for the benefit of a special class," and thus interprets *Rennie* too broadly.

In reviewing the VIIC, there is no indication that the Virgin Islands Legislature intended to create a personal right or a private remedy. First, the VIIC regulates both the actions of insurers and insureds without identifying any special class. *See, e.g.,* 22 V.I.C. § 1204 (barring false advertising of insurance); 22 V.I.C. § 1209 (prohibiting misrepresentations about the terms of

24

insurance policies); 22 V.I.C. § 1208 (prohibiting publishing of false or maliciously critical information about an insurer designed to injure its reputation); 22 V.I.C. § 1222 (prohibiting any person from making a false representation or statement in an insurance application); 22 V.I.C. § 1224 (prohibiting the presentation of false claims of proof). Moreover, the Court has not found—and Plaintiff does not cite—any materials in the legislative history of the VIIC demonstrating that it was designed to protect a special class of persons. For these reasons, this Court finds that the VIIC was written to protect the general public and not a special class.

Second, the only explicit remedies created in the VIIC is for the Insurance Commissioner to order violators to cease and desist from violating the VIIC and to assess fines for violators of the Act. 22 V.I.C. § 1201(d). The Virgin Islands Legislature has specifically provided for private remedies in similar regulatory statutes, but did not do so here. *See, e.g.,* Virgin Islands Trade Practices Act, 12A V.I.C. § 101 *et seq.* (permitting private remedies, including declaratory, injunctive, and compensatory relief for violations of the Act); Virgin Islands Consumer Code, 12A V.I.C. § 108 (permitting consumers to bring action for declaratory or injunctive relief or to recover damages).

The Superior Court opinion in *Dennie v. Olympic Rent-A-Car*, 72 V.I. 91, 2019 WL 6125944 (V.I. Super. 2019), is instructive in further analyzing whether the VIIC provides a private right of action. In *Dennie*, a taxi driver sued a rental car company for providing "courtesy rides" to customers although it did not have a taxi medallion, and argued that the rental car companies were violating Automobile-for-Hire statutes, 20 V.I.C. § 101 *et. seq.,* and 20 V.I.C. § 413(c). *Dennie*, 2019 WL 6125944, at *2. The Court in *Dennie* discussed the *Rennie* decision and rejected the comparison. The Court noted that the Automobile-for-Hire statutes were not "enacted for the benefit [of] a special class of persons" but rather were intended to regulate transportation of

passengers to benefit the general public. *Id.* at *4. Further, the *Dennie* court observed that the penalty provision under the Automobile-for-Hire statutes solely provided for enforcement by the Attorney General.

The same is true here, where the VIIC is clearly intended to protect the general public and not a special class and has an enforcement provision which describes the Commissioner of Insurance's authority to enforce the provisions of the statute. 22 V.I.C. § 55. That the Virgin Islands Legislature articulated the mechanisms for enforcement of the VIIC but omitted a private right of action suggests that such a right was intentionally omitted. *See also Joseph*, 2017 WL 7660718, at *8 ("[T]he existence of a comprehensive remedial scheme in the statute" implies that no private right of action exists "outside of the method[s] articulated.").

The Court thus finds that the VIIC does not create private causes of action. Accordingly, the amendment of Plaintiff's claims to include alleged violations of 22 V.I.C. §§ 2, 228(a), 1201, 1204, 1209, and 1201 *et. seq.* in Counts V, VI and VIII would be futile, and Plaintiff's request to amend the Complaint to add these claims is therefore denied with prejudice.

#### f. **Building Code Claim—Count VII**

In Count VII of the FAC, Plaintiff alleges that Defendant violated 29 V.I.C. § 310 by failing to compensate Plaintiff for the costs of repairing his home in a manner that satisfies current Virgin Islands building codes. (Dkt. No. 107-1 ¶ 103). The statute in question, 29 V.I.C. § 310, states in relevant part: "[i]f the damages to an existing building, by fire or other causes, exceed 50 percent of its then value as determined by the Commissioner, in repairing such damages it shall be made to conform in its entirety to the requirements of this chapter for new construction." 29 V.I.C. §

26

310(b).[8] The Virgin Islands Building Code applies to "the design, materials and methods, and to the construction, alteration, reconstruction, removal and demolition of every structure located in the Virgin Islands." 29 V.I.C. § 292(b)(1).

The Building Code is silent as to whether a private cause of action for breach of its provisions may be maintained. However, Section 35 of the Building Code enumerates the powers and duties of the Virgin Islands Housing Authority, including its ability to file lawsuits to enforce its provisions. 29 V.I.C. § 35. This "comprehensive remedial scheme," implies that no private right of action exists "outside of the method[s] articulated." *See Joseph*, 2017 WL 7660718, at *8. Because there is no private right of action for breach of 29 V.I.C. § 310—and Plaintiff provides no support for such a finding—amendment of Count VII would be futile based on this reason alone.

Moreover, the Building Code makes no reference to property insurance policies and therefore does not mandate that insurance policies cover such costs. Plaintiff cites no other statutory provision which mandates that property insurance cover costs associated with rebuilding the property to meet new building codes. Instead, Plaintiff relies only on *Antilles School, Inc. v. Lembach*, 61 V.I. 400 (V.I. 2016). (Dkt. No. 109 at 13-14), which involved an evidentiary dispute in a tort action in which the court determined that OSHA standards could be admitted as evidence to demonstrate the standard of care that the defendant school—which was not subject to OSHA standards—nonetheless owed to individuals on its premises. *Antilles* is completely inapposite, as it involved a tort action and did not discuss whether the Virgin Islands Building Code provides a

---

[8] The "Commissioner" mentioned in Section 310 is the Commissioner of Planning and Natural Resources. 29 V.I.C. § 293.

private right of action or whether home insurance is required to cover costs related to rebuilding a damaged property so that it is compliant with current building codes.

For these reasons, Count VII of the FAC does not state a plausible claim for relief to meet the *Iqbal/Twombly* standard and amendment would therefore be futile. Thus, Plaintiff's request to amend the Complaint to add Count VII will be dismissed with prejudice.

### g.  Negligent Hiring and Retention—Count IX

Count IX of Plaintiff's FAC asserts that Defendant negligently hired the appraisal agency that conducted the appraisal of the damage to Plaintiff's property. (Dkt. No. 107-2 ¶¶ 108-113). Plaintiff states that "[D]efendant had an employment relationship with its adjustment agency;" the "adjustment agency and its designated appraisers were incompetent and unskilled in the handling and adjusting of insurance claims in the U.S. Virgin Islands;" Defendant "had actual knowledge of its adjustment agency's incompetence;" and Plaintiff was injured by the actions of the appraisal agency. *Id*. ¶¶ 109-113.[9]

Plaintiff acknowledges that while the Virgin Islands Supreme Court has not yet set the legal standard for a claim of negligent hiring and retention under Virgin Islands law, the Superior Court has conducted a *Banks* analysis[10] and adopted a five-factor test, which requires the party seeking relief to show:

---

[9] Plaintiff does not specify the adjustor to which he is referring, but the Court interprets these claims as referring to the first appraiser that Defendant hired to assess the damages to Plaintiff's property, *id*. ¶¶ 20-24, rather than the second appraiser. Plaintiff alleges issues with the work of just the first appraiser, *id*. ¶¶ 108-13, while stating that the second appraiser's assessment of the damages "were more properly reflected in the report obtained by Hatter," *id*. ¶ 27.

[10] In *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011), the Virgin Islands Supreme Court held that, in the absence of Supreme Court precedent on a common law rule, courts in the Virgin Islands must conduct what has become known as a "*Banks* analysis" to determine which legal standard to adopt. *See Gumbs-Heyliger v. CMW & Assocs. Corp.*, 73 F. Supp. 3d 617, 625 (D.V.I. 2014); *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (2014)). In conducting a *Banks* analysis, courts balance three non-dispositive factors: (1) whether any [local or federal] courts [in the Virgin

> (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiffs [sic] injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries.

(Dkt. No. 109 at 15) (citing *Bell v. Radcliffe*, No. ST-13-CV-392, 2015 WL 5773561, at *11 (V.I. Super. Ct. Apr. 30, 2015). These factors have been relied upon by this Court and local courts. *See, e.g.*, *O'Reilly Plumbing & Constr., Inc. v. Lionsgate Disaster Relief, LLC*, No. 2019-0024, 2022 U.S. Dist. LEXIS 175986, at *20-21 (D.V.I. Sep. 28, 2022) (applying five-factor test in determining whether to grant leave to file amended complaint alleging negligent hiring of employee); *Miga v. Jamis*, 3:2019-cv-085, 2020 WL 6729080, at *2 (D.V.I. Nov. 16, 2020) (same); *Canton v. Gov't of Virgin Islands*, No. SX-13-CV-42, 2016 WL 9454118, at *5 (V.I. Super. Ct. Apr. 4, 2016) (finding that Plaintiff's failure to allege agent was incompetent or that employer knew or should have known of such incompetence doomed negligent hiring and retention claim).

Here, Plaintiff adequately alleges that Defendant's appraiser was incompetent when he asserts that Defendant's appraiser "was unfamiliar with the cost of construction and construction materials in the Virgin Islands" and "did not retain an engineer or any other professional to inspect the property" or "use any moisture detection devices in assessing the damages to the property." *Id*. ¶ 21-22. However, Plaintiff fails to plead the third element for Negligent Hiring and Retention. Plaintiff merely states in Count IX that "Defendant had actual knowledge of its adjustment agency's incompetence and unfamiliarity with the handling and adjusting of insurance claims in the U.S. Virgin Islands." *Id*. at 111. Plaintiff pleads no facts to support the "naked factual

---

Islands] have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Id*. at 600.

assertion[]" that Defendant had actual or constructive knowledge of any alleged incompetence of the appraiser, and therefore fails to assert any well-pleaded facts plausibly establishing the third element of this claim. *Joseph*, 54 V.I. at 649.

For these reasons, Count IX of the FAC fails to state a claim for negligent hiring and retention that is plausible on its face to satisfy the *Iqbal/Twombly* standard. Plaintiff's request to amend the Complaint to add Count IX is therefore denied without prejudice.

### h.  Tort of Bad Faith—Count X

Plaintiff alleges that Defendant "had no reasonable basis, either in law or fact, for its refusal to make payment under the Policy as it had already acknowledged that the damage was covered by the Policy" and this was a "willful and unjustified attempt to leverage its superior bargaining position to encourage [Plaintiff] to accept less than what he was owed under the Policy." (Dkt. No. 107-2 ¶¶ 117-18). Plaintiff also asserts that "[a]s a result of [Defendant's] bad faith, [Plaintiff] has suffered contract and tort damages." *Id*. ¶ 120. Defendant argues that a claim for bad faith is the same as a claim for a breach of the covenant of good faith and fair dealing, which Plaintiff already raised in Count II. (Dkt. No. 108 at 15). Defendant also argues that since Plaintiff has not sufficiently pleaded a breach of contract claim, Plaintiff cannot state a claim for bad faith. *Id*. at 16-17.

The Court notes that in his Reply, Plaintiff characterizes Count X as a claim for the tort of bad faith. (Dkt. No. 109 at 15-21). Even with this characterization, Plaintiff's claim for the tort of bad faith would fail to state a viable claim. "In the Virgin Islands, the tort of bad faith typically arises in the context of insurance contracts where insurers owe a duty of good faith and fair dealing to their insured." *Donovan v. A.H. Riise Gift Shop*, Case No. ST-94-CV-681, 2018 V.I. LEXIS 169, at *8-9 (V. I. Super. Ct. May 15, 2018) (citing *Justin v. Guardian Ins. Co.*, 670 F. Supp. 614,

616, 23 V.I. 278 (D.V.I. 1987)). To state a claim against an insurance company for the tort of bad faith, a plaintiff must allege, *inter alia*, "the existence of an insurance contract between the parties and a breach by the insurer." *Justin*, 670 F. Supp. at 616-17; *see also Williams v. Inter-Ocean Insurance Agency, Inc.*, 2020 WL 8020082, at *6. A claim of bad faith must be proven, ultimately, by clear and convincing evidence. *Justin*, 670 F. Supp. at 617.

As already discussed in Section III.A.4(b), *supra*, Plaintiff has not sufficiently pleaded that Defendant has breached the terms of the Policy. *See Williams*, 2020 WL 8020082, at *6 (holding that a claim for the tort of bad faith must fail where there was no breach in the defendant's insurance policy); *see also Justin*, 670 F. Supp. At 617 n.6 (explaining that plaintiff "will have to prove the existence of the contract and the breach to recover on his tort [of bad faith] claim.").

Accordingly, Plaintiff has not pleaded a plausible claim that could survive a motion to dismiss. Because Count X does not meet the *Iqbal/Twombly* standard, Plaintiff's amendment to the Complaint to add Count X is denied without prejudice.

## B.    Leave to Amend

Although Plaintiff has not requested leave to file another amended complaint, the Court finds it appropriate to address it here. Pursuant to Fed. R. Civ. P. 15(a), courts should "freely" give leave to amend complaints when justice requires. *In re Burlington Coat Factory*, 114 F.3d at 1434. Leave to amend should be "freely given," because "[a]llowing amendments to correct errors in existing pleadings furthers the objectives of the federal rules that cases should be determined on their merits." *Ali v. Intertek Testing Servs. Caleb Brett*, 332 F. Supp. 2d 827, 829 (D.V.I. 2004) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1474 (1990)). Indeed, leave to amend should be denied only when there exists evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated

31

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Absent a justifying reason, it is an abuse of discretion to deny leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

The Court will grant Plaintiff the opportunity to revise the claims raised in Counts I, II, III, IV, IX, and X. However, based on the Court's finding that the Virgin Islands Insurance Code and the Virgin Islands Building Code do not provide for private rights of action, the claims raised in Counts V, VI, VII, and VIII are futile and will be dismissed with prejudice.

### C.    Motion to Schedule Status Conference

Plaintiff has also filed a "Motion to Schedule a Status Conference to Enter Into a Scheduling Order." (Dkt. No. 111). The Motion lists the pending motions in the matter, notes that the case was stayed while the parties underwent the Appraisal Process, and requests a scheduling conference so that a scheduling order may be filed. *Id*. In light of the Court's denial of Plaintiff's Motion to Amend with leave to amend, setting a status conference at this stage of the case would be premature. The Court will therefore deny Plaintiff's request.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff's "Renewed Motion to Amend Complaint" (Dkt. No. 107) will be denied. Plaintiff's request to amend the Complaint to add the claims raised in Counts I, II, III, IV, IX, and X will be denied without prejudice. Plaintiff's request to amend the Complaint to add the claims raised in Counts V, VI, VII, and VIII will be denied with prejudice. Plaintiff will have up to and including July 8, 2024 within which to file an amended complaint that addresses the deficiencies that the Court has identified herein. In doing so, however, Plaintiff is not granted

leave to add claims beyond those already asserted in the FAC. Finally, Plaintiff's "Motion to Schedule a Status Conference to Enter Into a Scheduling Order" (Dkt. No. 111) will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Dated: June 6, 2024

_____/s/_____
WILMA A. LEWIS
District Judge